UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Olena Kalichenko, | Case No. 21-cv-2156 (DSD/TNL) |
| Plaintiff, | |
| v. | **REPORT & RECOMMENDATION** |
| Warden M Starr, | |
| Defendant. | |

Olena Kalichenko, Reg No. 85278-053, Federal Correctional Institution – Waseca, Unit C, P.O. Box 1731, Waseca, MN 56093 (pro se Plaintiff); and

Kristen Elise Rau, Department of Justice, United States Attorney's Office, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415 (for Defendant).

## I. INTRODUCTION

This matter comes before the Court on Defendant Warden M Starr's Motion to Dismiss and/or for Summary Judgment, ECF No. 38. This motion has been referred to the undersigned for a report and recommendation to the district court, the Honorable David S. Doty, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1.

## II. BACKGROUND

Plaintiff Olena Kalichenko is currently incarcerated in the correctional institution located in Waseca, Minnesota ("FCI-Waseca"), maintained by the Federal Bureau of Prisons ("BOP"). Her projected release date is September 28, 2031. *See Find an inmate*, Fed. Bureau of Prisons, *available at* https://www.bop.gov/inmateloc/.

1

According to Defendant, Plaintiff's claims relate to hunger strikes she initiated at FCI-Waseca. Def.'s Mem. in Supp. at 2, ECF No. 39. In January 2021, Plaintiff initiated a hunger strike, and, by January 19, 2021, Plaintiff had missed a total of 14 meals. *Id*.; *see also* Decl. of Mistelle Starr ¶ 7, ECF No. 41. On January 19, 2021, medical staff at FCI-Waseca determined that an assessment "was medically necessary for them to determine an appropriate treatment plan, i.e., whether to involuntarily feed [Plaintiff] to prevent life threatening deterioration." Starr Decl. ¶ 7. Plaintiff refused the medical assessment, and Defendant then authorized a calculated use of force[1] team to conduct a medical assessment. Starr Decl. ¶ 7. Several months later, Plaintiff initiated another hunger strike, and on July 19, 2021, Defendant determined a calculated use of force was necessary to obtain a medical assessment. Starr Decl. ¶ 9. Due to Plaintiff's declining health and her refusal to accept nutrition voluntarily, Defendant determined a calculated use of force was necessary to facilitate involuntary feeding. Starr Decl. ¶ 9. The next day, on July 20, 2021, Defendant authorized another calculated use of force to obtain a medical assessment in light of the involuntary feeding the previous day. Starr Decl. ¶ 11.

In her Amended Complaint, Plaintiff alleges that she sustained injuries from these encounters. *See generally* Am. Compl., ECF No. 21. Specifically, Plaintiff alleges that on January 19, 2021, staff members, all dressed in helmets and with shields, opened the door

---

[1] "A 'calculated use of force' is a formalized team technique used to control an inmate where other efforts to resolve a situation have failed or are ineffective to protect inmate safety, prevent serious property damage, and ensure institutional safety and good order, utilized when an inmate is in an area that can be isolated and when there is no immediate, direct threat to the inmate or others." Def.'s Mem. in Supp. at 2 (citing 28 C.F.R. §§ 552.20, 552.21(b)); *see also* 28 C.F.R. § 552.21(c) ("The Use of Force Team Technique ordinarily involves trained staff, clothed in protective gear, who enter the inmate's area in tandem, each with a coordinated responsibility for helping achieve immediate control of the inmate.").

to her cell, placed her in handcuffs, put a chain around her waist, and physically removed her from her cell. Am. Compl. at 4. Plaintiff alleges that a nurse then tried to take blood from her vein three times, but her "blood circulation had been blocked entirely due to double handcuffs which caused [her] unbearable pain." Am. Compl. at 4. Plaintiff contends that she "begg[ed] the staff members to stop causing [her] pain and stop torturing [her]," but they ignored her complaints. Am. Compl. at 4. She alleges that she suffered both physical and mental injuries and never received any treatment. Am. Compl. at 4.

Plaintiff also alleges that, on July 19, 2021, Defendant "ordered forceful feeding of [her] during which [she] suffered both internal and external injuries." Am. Compl. at 5. She states that staff members, again, dressed in helmets and with shields, entered her room forcefully and placed her in handcuffs and chains. Am. Compl. at 5. A nurse then "inserted a plastic tube inside of [her] right nostril[] causing unbearable pain to [her] nose and throat to the point where [she] couldn't swallow," and "then started to pour out some liquid through the tube." Am. Compl. at 5. Plaintiff contends this lasted approximately 40 minutes and she did not receive any medical care afterwards. Am. Compl. at 5. She contends that "a few minutes prior to the forceful feeding [she] voluntarily accepted the IV so there was no reason to subject [her] to such a torture because there was no threat to [her] life at that point." Am. Compl. at 6. Plaintiff alleges that she suffered both internal and external injuries, including "a substantial amount of psychological trauma." Am. Compl. at 6. She contends that she sustained injuries to her throat and nose in that she could not swallow or breath fully for a number of days after the procedure. Am. Compl. at 6.

3

Further, Plaintiff alleges that, on July 20, 2021, Defendant "ordered a calculated use of force" against her. Am. Compl. at 7. She contends that staff members, wearing helmets and protective gear, entered the medical observation room she was in and handcuffed and chained her. Am. Compl. at 7. She alleges that "one of the staff members that was holding [her] arm caused [her] severe pain." Am. Compl. at 7. She contends that "there was no need" to use force against her because she "was very weak physically" and "never showed any resistance." Am. Compl. at 7. Again, she alleges that she sustained both physical and mental injuries, including "serious phsycological [sic] trauma." Am. Compl. at 7.

Plaintiff contends that each of these incidents was recorded on camera. Am. Compl. at 4-7. Plaintiff requests "production of the footage of the incident[s] according to Freedom of Information Act." Am. Compl. at 8. She also seeks monetary damages in the amount of $100,000 for the January 19 incident, $250,000 for the July 19 incident, and $100,000 for the July 20 incident. Am. Compl. at 5, 8-9.

### III. ANALYSIS

Defendant moves to dismiss this matter under Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, for summary judgment under Federal Rule of Civil Procedure 56. ECF No. 38; *see also generally* Def.'s Mem. in Supp., ECF No. 39. According to Defendant, Plaintiff's case fails for four reasons. Def.'s Mem. in Supp. at 1. First, Defendant argues that Plaintiff has not administratively exhausted her claims against Defendant as required. *Id.* Second, Defendant contends that Plaintiff has not adequately alleged any claim against Defendant under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), because she did not state that she is suing Defendant in her individual capacity.

4

*Id*. Third, Defendant argues that no *Bivens* remedy exists pursuant to the recent Supreme Court decision in *Egbert v. Boule*, 142 S. Ct. 1793 (2022). *Id*. Fourth, Defendant contends that "even if the Court overlooks [Plaintiff's] failure to adequately plead her *Bivens* claims, and even if *Egbert* did not doom them, [Plaintiff's] allegations do not adequately allege involvement by [Defendant] sufficient to entitle her to relief." *Id*. at 1-2.

### A. Legal Standard

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); *see Hearing v. Minn. Life Ins. Co.*, 793 F.3d 888, 893 (8th Cir. 2015) ("Under Federal Rule of Civil Procedure 12(d), a motion to dismiss must be treated as one for summary judgment if the court considers matters outside the pleadings that were presented by the movant"). "Most courts view matters outside the pleading as including any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings." *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992) (quotation omitted). "Courts have discretion to decide whether to accept material outside the pleadings that is offered in conjunction with a Rule 12(b)(6) motion." *Thornberg v. State Farm Fire & Cas. Co.*, No. 14-cv-122 (SRN/JJK), 2015 WL 3612550, at *2 (D. Minn. 2015) (citing *Stahl v. United States Dep't of Agric.*, 327 F.3d 697, 701 (8th Cir. 2003)). Because both parties have submitted materials outside of the pleadings for consideration, the Court converts Defendant's motion to dismiss to one for summary judgment. *See Wolf v. Johnson*, No. 08-cv-818 (PJS/JSM), 2009 WL 585971, at *6 (D. Minn. 2009); *see also Hearing*, 793

F.3d at 893 ("Where the movant designates its motion to dismiss alternatively as a motion for summary judgment, and the nonmovant submits materials outside the pleadings, a district court is not required to give formal notice that it will treat a motion as one for summary judgment.").

"Summary judgment is proper if, drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Smith v. Securus Techs., Inc.*, 120 F. Supp. 3d 976, 980 (D. Minn. 2015) (citing Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). "The moving party bears the burden of establishing a lack of genuine issue of fact." *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 820 (8th Cir. 2010) (citing *Celotex Corp.*, 477 U.S. at 323). At the same time, "the nonmoving party 'may not rest upon mere allegations or denials of h[er] pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson*, 477 U.S. at 256); *accord Smith*, 120 F. Supp. 3d at 981. "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.'" *Smith*, 120 F. Supp. 3d at 980 (quoting *Anderson*, 477 U.S. at 248). Additionally, "summary judgment is properly entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 322); *see also Brunsting*, 601 F.3d at 820 ("[I]f a nonmoving party who has the burden of persuasion at trial does not present

6

sufficient evidence as to any element of the cause of action, then summary judgment is appropriate.").

When deciding a summary judgment motion, courts construe pro se pleadings liberally and hold them to a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Still, a pro se plaintiff's claims cannot survive a summary judgment motion unless she has set forth specific facts demonstrating that there is a genuine issue for trial. *See Quam v. Minnehaha Cnty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987). For the purposes of summary judgment, arguments and statements in briefing are not evidence and cannot create issues of fact. *See Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 467 n.6 (8th Cir. 2002).

### B. Failure to Exhaust Administrative Remedies

The Prisoner Litigation Reform Act ("PLRA") requires prisoners to exhaust all of their available administrative remedies before seeking redress in the courts. *Ross v. Blake*, 136 S. Ct. 1850, 1854-55, 1856 (2016); *Hill v. Holinka*, No. 06-cv-4720 (PJS/JJG), 2008 WL 549928, at *4 (D. Minn. Feb. 27, 2008). In relevant part, 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under . . . Federal law . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "The benefits of exhaustion 'include allowing a prison to address complaints about the program it administers before being

subject to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record.'" *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007)). "An exhaustion requirement protects a correctional institution's authority by compelling inmates 'to give the agency a fair and full opportunity to adjudicate their claims.'" *Id.* (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)).

The PLRA does not specify an exhaustion procedure. For a prisoner's claims to be considered administratively exhausted, the prisoner must follow the grievance procedure of the facility where they are incarcerated. *Jones v. Bock*, 549 U.S. 199, 218 (2007). The BOP has a four-step administrative remedy procedure. 28 C.F.R. §§ 542.10-.19. First, a prisoner must present the issue informally to a staff member, who should attempt to resolve the issue informally. 28 C.F.R. § 542.13(a). Second, if the issue is not resolved informally, the prisoner must submit a formal written Administrative Remedy Request using a BP-9 form within 20 calendar days following the date on which the basis for the request occurred. *Id.* § 542.14. Third, if the prisoner is not satisfied with the Warden's response to the Administrative Remedy Request, the prisoner must submit an Appeal to the BOP's Regional Director using a BP-10 form within 20 calendar days of the Warden's response. *Id.* § 542.15(a). Lastly, if the prisoner is not satisfied with the Regional Director's response, the prisoner must appeal again, this time to the BOP's General Counsel, using a BP-11 form within 30 calendar days of the Regional Director's response. *Id.* Thus, under the BOP's administrative remedy procedure, a claim is not fully exhausted until the BOP's

General Counsel has denied it. *See id*. ("Appeal to the General Counsel is the final administrative appeal.").

The PLRA contains no exceptions to its requirement that prisoners administratively exhaust their remedies. *Ross v. Blake*, 578 U.S. 632, 637-40 (2016). There are, however, certain circumstances where administrative exhaustion procedures may not be "available" for purposes of the PLRA. *Id*. at 640-46. These circumstances include: (1) when the procedure would be a "dead end" because officers are unable or unwilling to provide relief; (2) when the procedure is so opaque as to become "incapable of use"; and (3) when prison officials prevent a prisoner from utilizing the procedure through "machination, misrepresentation, or intimidation." *Id*. at 642-46.

Exhaustion is required even if "the inmate subjectively believe[s] that there [is] no point in pursuing h[er] administrative remedies." *Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015) (quotation omitted). Moreover, the requirement to exhaust administrative remedies applies to all forms of relief sought. *Booth v. Churner*, 532 U.S. 731, 741 (2001). The PLRA is satisfied when the inmate "pursu[es] the prison grievance process to its final stage to an adverse decision on the merits." *Id.* (quotation omitted). "If it is established that exhaustion of administrative remedies did not occur prior to filing of the suit, both the Supreme Court and the Eighth Circuit have made clear that dismissal is mandatory." *Wolf*, 2009 WL 585971, at *7 (citing *Jones*, 549 U.S. at 211; *Woodford*, 548 at 85; *Johnson v. Jones*, 340 F.3d 62, 627-28 (8th Cir. 2003)); *see Ross*, 136 S. Ct. at 1856.

Defendant contends that Plaintiff failed to exhaust her administrative remedies. In support of her position, Defendant filed the Boldt Declaration with accompanying exhibits.

9

Boldt is a paralegal specialist at the BOP's Consolidated Legal Center in Minnesota, which handles, among other things, all litigation for federal correctional facilities in Minnesota. Decl. of Shannon Boldt ¶ 1, ECF No. 42. Boldt has access to records maintained by the BOP in the ordinary course of business, including administrative remedy requests by inmates. Boldt Decl. ¶ 2. According to Boldt, the first step of the grievance process, informal resolution with prison staff, i.e. the BP-8 (Requests for Informal Resolution Forms), is not logged into the BOP's system, but each subsequent step is logged into the system, e.g., the BP-9 (formal Administrative Remedy Request), BP-10 (Regional Office Administrative Remedy Appeal), and BP-11 (Central Office Administrative Remedy Appeal). Boldt Decl. ¶¶ 5-7, 9-10; *see also* 28 C.F.R. §§ 542.13-.15.

According to Boldt, Plaintiff "has filed or attempted to file thirty administrative remedies during her incarceration," but only a few relate to the allegations in Plaintiff's Amended Complaint.[2] Boldt Decl. ¶ 12; Ex. A to Boldt Decl., ECF No. 42-1; *see also* Def.'s Mem. in Supp. at 4.

On August 4, 2021, Plaintiff submitted an administrative request (assigned Administrative Remedy No. 1089863-F1) to Defendant, alleging she suffered multiple

---

[2] Neither Plaintiff nor Defendant submitted documentation of an administrative remedy for the January 2021 "calculated use of force" medical assessment. *See* ECF No. 19-1; *see also* Boldt Decl. In a previous lawsuit filed by Plaintiff, the court found that the record "does not indicate that [an administrative remedy] was submitted through the BOP's remedy procedure or followed an initial request to the Warden or denial." *Kalichenko v. Barnes*, No. 20-cv-1646 (WMW/BRT), 2021 WL 7210067, at *6 (D. Minn. Dec. 7, 2021), *report and recommendation adopted*, 2022 WL 616963 (D. Minn. Mar. 2, 2022). And, even assuming an administrative remedy was submitted through the BOP's remedy procedure, "the record does not demonstrate that a decision on her appeal to the Regional Director was appealed to the General Counsel in the Central Office." *Id*. Accordingly, the court found "that Plaintiff did not exhaust her [] administrative remedy at any step" with respect to the January 2021 "calculated use of force" medical assessment. *Id*. Absent any additional documentation relating to the January 2021 "calculated use of force" medical assessment, the Court adopts this analysis and concludes that Plaintiff did not exhaust her administrative remedies with respect to the January 2021 "calculated use of force" medical assessment.

10

internal injuries and pain as a result of a force feeding ordered by Defendant on July 19, 2021. Boldt Decl. ¶ 13; *see also* Ex. A to Boldt Decl. at 13. On August 6, 2021, the Warden responded to the request. Boldt Decl. ¶ 13; *see also* Ex. B to Boldt Decl., ECF No. 42-2 at 6. On August 16, 2021, Plaintiff appealed the Warden's response to the Regional Director (assigned Administrative Remedy No. 1089863-R1). Boldt Decl. ¶ 14; *see also* Ex. A to Boldt Decl. at 14. The Regional Director responded to the request on September 2, 2021. Boldt Decl. ¶ 14; *see also* Ex. B to Boldt Decl. at 3. On October 22, 2021, Plaintiff appealed the response to the General Counsel at the BOP's Central Office (assigned Administrative Remedy No. 1089863-A1). Boldt. Decl. ¶ 15; *see also* Ex. A to Boldt Decl. at 15. The Central Office rejected the request due to Plaintiff not providing a copy of Defendant's response. Boldt Decl. ¶ 15; *see also* Ex. B to Boldt Decl. at 1. Plaintiff was given the opportunity to resubmit her appeal in proper form within 15 days of the rejection notice. Boldt Decl. ¶ 15; *see also* Ex. B to Boldt Decl. at 1. Plaintiff, however, never refiled it at any level. Boldt Decl. ¶ 16.

Also, on August 4, 2021, Plaintiff submitted an administrative remedy request (assigned Administrative Remedy No. 1089864-F1) to Defendant, alleging she suffered bruises to her right arm following a force feeding ordered by Defendant on July 20, 2021. Boldt Decl. ¶ 17; *see also* Ex. A to Boldt Decl. at 13; *see also* Ex. C to Boldt Decl., ECF No. 42-3 at 5. On August 5, 2021, the Warden responded to the request. Boldt Decl. ¶ 17; *see also* Ex. C to Boldt Decl., ECF No. 42-3 at 6. On August 16, 2021, Plaintiff appealed the Warden's response to the Regional Director (assigned Administrative Remedy No. 1089864-R1). Boldt Decl. ¶ 18; *see also* Ex. A to Boldt Decl. at 14. The Regional Director

11

responded to the request on September 2, 2021. Boldt Decl. ¶ 18; *see also* Ex. C to Boldt Decl. at 3. On October 22, 2021, Plaintiff appealed the response to the General Counsel at the BOP's Central Office (assigned Administrative Remedy No. 1089864-A1). Boldt. Decl. ¶ 19; *see also* Ex. A to Boldt Decl. at 15. The Central Office rejected the request due to Plaintiff not providing a copy of Defendant's response. Boldt Decl. ¶ 19; *see also* Ex. B to Boldt Decl. at 1. Plaintiff was given the opportunity to resubmit her appeal in proper form within 15 days of the rejection notice. Boldt Decl. ¶ 19; *see also* Ex. B to Boldt Decl. at 1. Plaintiff, however, never refiled it at any level. Boldt Decl. ¶ 20.

As Courts in this District have concluded, when the Central Office rejects a plaintiff's appeal because she did not provide the required documents and the Central Office gives the plaintiff additional time to correct and resubmit her appeal, the Central Office has not rendered a decision on the appeal. *See Kellum v. Kallis*, No. 21-cv-1664 (KMM/LIB), 2022 WL 848212, at *4 (D. Minn. Jan. 31, 2022) (citing *Crawford v. Fisher*, No. 11-cv-641 (MJD/JJG), 2012 WL 465767, at *3 (D. Minn. Jan. 5, 2012), *report and recommendation adopted*, 2012 WL 446247 (D. Minn. Feb. 13, 2012)), *report and recommendation adopted*, 2022 WL 847606 (D. Minn. Mar. 22, 2022).

Here, while Plaintiff appealed both August 4, 2021 administrative remedy requests to the General Counsel at the BOP's Central Office, the appeals were rejected because Plaintiff failed to include a copy of the Warden's response. *See Kellum*, 2022 WL 848212, at *4. And, "[a]lthough the Central Office permitted [Plaintiff] additional time to resubmit h[er] appeal, [Plaintiff] here failed to do so." *See id*. As such, Plaintiff failed to exhaust her administrative remedies. *See id*.; *see also Crawford*, 2012 WL 465767, at *3

("Petitioner failed to resubmit his appeal as instructed. Therefore, Petitioner did not exhaust his administrative remedies . . . [because] [a]lthough he was given time to resubmit his appeal, he failed to do so, and the Central Office did not render a decision."); *see also, e.g., Banks v. Gulbrandson*, No. 15-cv-3822 (SRN/JSM), 2016 WL 6275190, at *7 (D. Minn. Oct. 5, 2016) (finding that the plaintiff failed to exhaust her available administrative remedies because her appeal was procedurally rejected by the Central Office as untimely and although the Central Office gave the plaintiff the opportunity to explain why her appeal was untimely, she never attempted to resubmit it), *report and recommendation adopted*, 2016 WL 6246759 (D. Minn. Oct. 25, 2016); *Kriemelmeyer v. Bureau of Prisons*, No. 09-cv-1231 (ADM/SRN), 2010 WL 1626884, at *4 (D. Minn. Mar. 24, 2010) (finding that the petitioner did not exhaust his administrative remedies where "[t]he Central Office rejected his appeal because he did not provide a copy of the response from the Regional Office" and "[t]he Central Office informed Petitioner that he could resubmit his appeal in proper form within 15 days of the rejection notice," but Petitioner "chose not to re-appeal to the Central Office" and instead filed a complaint in federal court), *report and recommendation adopted*, 2010 WL 1626883 (D. Minn. Apr. 21, 2010).

Plaintiff argues that she did exhaust her administrative remedies. She states:

> I filed forms 8 and 9 to the Warden in August, she responded to me within a couple of days. Immediately after her response, I filed a remedy with the Regional Office, received a response from them in September and immediately after receiving a response from the Regional office, I submitted a remedy to central office requesting to provide me with the footage of excessive use of force incidents and all forceful feeding tape recordings to FOIA. The central office hasn't responded to me yet. . . .

13

ECF No. 14 at 1-2.  As discussed above, however, the Central Office rejected Plaintiff's appeals because she did not provide a copy of the documents required by statute.  The Central Office gave Plaintiff the opportunity to resubmit her appeals in proper form within 15 days of the Central Office's rejection notices, but Plaintiff failed to do so.  Thus, the Central Office never rendered a decision on Plaintiff's appeals, and, by failing to resubmit her appeal with the required documents, Plaintiff did not exhaust her administrative remedies.  *See Kellum*, 2022 WL 848212, at *4; *Crawford*, 2012 WL 465767, at *3; *Kriemelmeyer*, 2010 WL 1626884, at *4.

In the alternative, Plaintiff appears to argue that she was not required to exhaust her administrative remedies because she was prevented from doing so by BOP staff.  *See* ECF No. 19 at 4 ("Your failuture [sic] to provide me with the copies of [the Warden's] response I will take as your deliberate attempt to try to block me from exhausting the administrative remedy procedure.").  She contends that she requested copies of the Warden's responses to her administrative remedy requests multiple times to no avail, and she therefore could not attach them to her appeals.  *See generally* ECF No. 19; *see also* ECF No. 24.

"[T]he exhaustion requirement hinges on the availability of administrative remedies." *Ross*, 136 S. Ct. at 1858 (quotation omitted).  Exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id.*  "A remedy that prison officials prevent a prisoner from utilizing is not an available remedy under § 1997e(a)." *Porter*, 781 F.3d at 452 (quotation omitted).  Stated differently, "[i]nmates are excused from

exhausting remedies when officials have prevented prisoners from utilizing the procedures . . . ." *Porter*, 781 F.3d at 452 (quotation omitted).

Here, Plaintiff has not shown, nor does the record reflect, that BOP officials prevented her from utilizing the BOP's administrative remedy program. According to the BOP, Plaintiff was provided an original copy—as well as two additional copies—of the Warden's response. ECF No. 19 at 2-3. In fact, Plaintiff filed administrative appeals to the Regional Director, where she was required to attach a copy of the Warden's responses, demonstrating that Plaintiff had access to the Warden's responses. Because BOP officials provided Plaintiff three copies of the Warden's responses and did not thwart or otherwise prevent Plaintiff from using the administrative remedy process, she is not excused from PLRA's exhaustion requirement.

In sum, Plaintiff failed to exhaust her administrative remedies with respect to the claims in her Amended Complaint. Because she has not exhausted her administrative remedies in accordance with 42 U.S.C. § 1997e(a), these claims must be dismissed without prejudice. *See Ross*, 136 S. Ct. at 1856; *Porter*, 781 F.3d at 452.

[*Continued on next page.*]

## IV. RECOMMENDATION

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Dismiss and/or for Summary Judgment, ECF No. 38, be **GRANTED**.

2. Plaintiff's claims be **DISMISSED WITHOUT PREJUDICE**.

Date: July __5__, 2023         *s/ Tony N. Leung*
                               Tony N. Leung
                               United States Magistrate Judge
                               District of Minnesota

                               *Kalichenko v. M Starr*
                               Case No. 21-cv-2156 (DSD/TNL)

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.